Julie STAHL, Plaintiff–Appellant,

v.

ST. ANTHONY MEDICAL CENTER OF CROWN POINT, INC., Defendant–Appellee.

No. 03–1430.

United States Court of Appeals, Seventh Circuit.

Argued May 19, 2004.

Decided June 23, 2004.

F. Amin Istrabadi, Blachly, Tabor, Bozik & Hartman, Valparaiso, IN, for Plaintiff–Appellant.

Robert J. Dignam, Spangler, Jennings & Dougherty, Merrillville, IN, for Defendant–Appellee.

Before CUDAHY, RIPPLE, and WILLIAMS, Circuit Judges.

### ORDER

Julie Stahl filed this Title VII suit against Saint Anthony Medical Center ("SAMC"), her former employer, alleging that SAMC discriminated against her on the basis of her gender when it failed to hire her for two new positions. She claimed that SAMC's discrimination was reflected by the questions two interviewing administrators asked about her "family situation." The district court granted summary judgment for SAMC, concluding that the questions were not direct evidence of discrimination and that Stahl could not prove discrimination indirectly because she could not identify a similarly-situated male employee. We affirm.

Stahl began work at SAMC as an employee assistant in Human Resources in June 1990. After a number of years of satisfactory work, Stahl was made a case manager in the occupational medicine program, which recognizes and treats work-related injuries and provides preventive health care in the workplace. In 1999 Stahl became the regional manager of occupational medicine, working under Vice President for Human Resources Tam Cohen. Cohen evaluated Stahl's performance yearly and later testified that, overall, Stahl "met or exceeded expectations" and had good organizational skills, an excellent rapport with clients, and a high level of dedication.

During Stahl's tenure in occupational medicine, the department underwent some changes. First, Dr. Daniel Netluch was appointed the medical director of the program in 1996. Stahl did not believe Dr. Netluch was a good medical director; she states that he met "no goals" while he was in the position. Dr. Netluch resigned as director in July 1998 due to philosophical differences with Cohen. Second, Stahl temporarily left the office when she became pregnant and delivered twins in May 1998. When her maternity leave ended, Stahl requested to work from home for two days each week. Cohen granted the request, and she testified that Stahl's working from home never caused any problems for the department.

In November 1999 Dr. Netluch was reappointed as the medical director of the occupational health program and assumed direct supervisory authority over Stahl. Stahl felt that Dr. Netluch did a poor job of communicating with her; she says he used to schedule meetings or change their times without telling her. She also says that Dr. Netluch undermined her ability to supervise her employees and failed to give

her direction and guidance regarding her role with the program.

Because SAMC and the occupational health program were "not doing well" financially, Dr. Netluch decided to consolidate occupational health with the urgent care and employee health programs. As part of that consolidation, Dr. Netluch and several other administrators restructured Stahl's position into two new positions: a part-time "lead case manager" and a full-time "nurse manager." Notices soliciting applications for these positions were posted while Stahl was on vacation. Cohen stated that SAMC generally did not "surprise" employees by reorganizing their positions while they were away, and she believed the hospital was playing "games" in Stahl's case. Stahl eventually bid for both new positions.

According to Stahl, Dr. Netluch withheld information about the new positions from her. She says that he cancelled or skipped appointments she made with him through his secretary, failed to respond to her e-mails, and even avoided her in the hallways. When Dr. Netluch finally met with her to describe the new positions, she says he was "vague" and "evasive," and could not explain the specific functions the positions involved. When he asked her to identify which position interested her, she responded that she did not believe she had enough information to decide.

As Stahl investigated the new positions, she says that SAMC and Dr. Netluch made her children and her "home situation" an issue in the hiring decision. Stahl says that Dr. Netluch asked her three to five times if she would be able to continue to do her job given her responsibilities at home. Dr. Netluch, however, recalls asking Stahl if she could resume performing her duties entirely on the hospital premises, and says she responded that she could do so if he gave her six to eight weeks to arrange child care. When Stahl met with Dr. Netluch and Linda Decker, the Vice President for Nursing Services, to discuss the new positions, she says that they asked if her children would affect her "desire or ability" to work. Stahl responded that her home situation had nothing to do with her ability to perform the job. Decker understood this discussion as an attempt to determine if Stahl would be willing and able to find child care so that she could once again work full time in the hospital setting. Dr. Netluch has since denied ever suggesting that he did not want to hire any employee because that employee had children.

Embarrassed by the administration's treatment of her and concerned about what she viewed as a lack of support for her program, Stahl resigned from SAMC in February 2000. The new positions had not been filled at that time, and Dr. Netluch considered Stahl to have withdrawn herself from consideration for the new positions. Eventually the positions were filled by two females. Barb Lumbarkoski, who has two small children at home, was hired for the full-time nurse manager position. Dr. Netluch stated that Stahl would have been qualified for this position, had she agreed to become certified in CPR and undergo urgent care training. On the other hand, Decker did not believe that Stahl was qualified and told Dr. Netluch as much.

The district court granted summary judgment to SAMC. The court first concluded that Stahl had not provided direct evidence of discrimination; as for the questions that Decker and Dr. Netluch asked her about her family situation, the court found them "perfectly appropriate" given her history of working at home, and the hospital's desire to have the new positions performed entirely on the premises. The court also opined that, even assuming

the questions raised an inference of gender discrimination, any such inference was dispelled by SAMC's eventual hiring of a woman with children for one of the positions. Nor had Stahl shown any discriminatory animus, the court added; in light of her resignation before the hospital made its hiring decision, a jury could not reasonably conclude that questions about her family status had anything to do with SAMC's decision not to offer her one of the new positions. Finally, the court concluded that Stahl could not make out a prima facie case of discrimination under the indirect, burden-shifting test, *see* *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because no men had applied for the position she sought, and thus she could not show that similarly-situations employees outside her protected class were treated more favorably.

On appeal, Stahl first argues that the district court erred when it determined that the questions that Decker and Dr. Netluch asked her about her "family situation" did not constitute direct evidence of discrimination. She argues that a jury could infer from these questions that SAMC failed to hire her because of her gender.

A plaintiff in a Title VII suit may prove discrimination through direct evidence that the person or persons who made a contested decision considered an illegal criterion. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir.1999). A decisionmaker's statements may provide direct evidence of discrimination if they are made around the time of and in reference to the contested employment decision. *Hunt v. Markham*, 219 F.3d 649, 652 (7th Cir.2000). Questions about a candidate's family situation "are appropriate and in some circumstances probably necessary," so long as they do not "single out women and focus on them as if they were the only sex concerned about how family responsibilities may affect the demands of the job." *Bruno v. Crown Point*, 950 F.2d 355, 362 (7th Cir.1992).

The questions Decker and Dr. Netluch asked Stahl in this case were appropriate and not based on stereotypes. According to Stahl, Dr. Netluch asked her "whether [she] could or even wanted to continue to do [her] job" if she were required to perform it entirely on the hospital premises and place her children in day care. Stahl admits that she was asked the questions at a time during which she was working from home two days a week, and thus the questions were not illogical or unnecessary. They focused on "potential time conflicts," not on the stereotyped assumption that "females are the primary care providers for children and that the wife's career is secondary to the husband's." *See Bruno*, 950 F.2d at 362. Accordingly, the district court did not err in determining these questions were not direct evidence of discrimination.

Stahl also argues that the district court erred when it considered two "irrelevant" pieces of evidence in its direct evidence analysis: the fact that SAMC ultimately hired a woman with children for one of the positions, and the fact that no males applied for the positions.

When evaluating direct evidence in support of a claim of discrimination, we looks at context in which an allegedly discriminatory statement was made. *See Kennedy v. Schoenberg, Fisher, Newman, Ltd.*, 140 F.3d 716, 724 (7th Cir.1998). An employer's other hiring decisions may be a relevant part of that context. *See Mateu–Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 625 (7th Cir.2002).

The evidence that Stahl claims the district court should not have considered was

clearly relevant. The fact that SAMC eventually hired a woman with children for one of the positions negates any inference that Dr. Netluch's questions concerned gender rather than possible time conflicts. *See Mateu–Anderegg*, 304 F.3d at 624–625 ("The remark that more men were needed in the department is not overtly discriminatory ... because [the decisionmaker] hired another woman to replace [the plaintiff]"). Similarly, the district court's observation that no men had applied for the positions was relevant to the issue of whether the defendant had asked applicants of both genders questions about their "family situations." *See Bruno*, 950 F.2d at 362. The district court considered the appropriate evidence.

Stahl next challenges the district court's conclusion that she did not make out a prima facie case of discrimination under the indirect method because she could not satisfy the fourth prong—identifying a male employee who was treated better than her. She argues that she satisfied her burden under this prong by showing that "no male has ever had his home life and family situation taken into consideration by decision-maker Netluch."

A Title VII plaintiff may prove discrimination by showing that he or she (1) belonged to a protected class, (2) performed at a level that met the defendant's legitimate expectations, (3) was subjected to an adverse employment action, and (4) was treated differently than a similarly situated person outside the protected class. *McDonnell Douglas*, 411 U.S. at 802. To meet the burden of identifying a "similarly situated" employee, a plaintiff must show that someone outside the protected class is "directly comparable to her in all material respects," including experience, education, and qualifications. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002).

Stahl did not present evidence to the district court that any male employee of SAMC had qualifications similar to her own, and she does not attempt to do so on appeal. Instead, she argues that it was enough for her to show that all male employees of SAMC were treated better than she. However, a plaintiff must present *specific* evidence that employees who were treated better had the same qualifications; general allegations of better treatment will not suffice. *Pafford v. Herman*, 148 F.3d 658, 668 (7th Cir.1998). Stahl did not identify any comparably-positioned employee who received better treatment than she, and therefore she did not meet her burden under the indirect method of proving discrimination.

Accordingly, the decision of the district court is AFFIRMED.